IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br> ANDRE GIVENS | CRIMINAL No. 14-cr-10302-IT |

### DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE PURSUANT TO FED. R. CRIM. EVID. 401, 403, 404

Defendant Andre Givens respectfully moves the Court to exclude the following from his trial:

1. Any reference by during trial to Mr. Givens being a "felon" or having a "felony" conviction, or reference to the charge as "felon-in-possession";

2. Evidence that the firearm he allegedly possessed had been stolen in the past;

3. Evidence of an unrelated earlier shooting;

4. Evidence of gang membership or prior police contact with Mr. Givens.

As grounds, it is stated:

### *Introduction*[1]

Mr. Givens is charged with possessing a firearm and ammunition after having been convicted of a crime punishable by a term of greater one year, in violation of 18 U.S.C. § 922(g).

Briefly, the government's evidence consists of testimony that on July 9, 2014, around

---

[1] In setting out the evidence the government is expected to present, the defense does not stipulate to, concede, or otherwise agree to any of the facts recited here.

9:53 p.m., four plain clothes Boston Police officers in an unmarked car were looking for suspicious activity related to reports of a shooting that had just occurred Woolson Street. Determining that there were likely already sufficient officers responding directly to Woolson Street, these four officers decided to "play the surrounding areas" by looking for suspicious activity that may have been related to the shooting. The officers observed approximately six young men near the intersection of Blue Hill Avenue and Almont Street. There is no indication that when the officers saw the young men they were acting suspiciously.

Rather, Officer Matthew Conley recognized one of the young men as Rashad Phillips, whom Conley had attempted to visit at his home the previous night during a probation check. Officer Conley first called out to Phillips, then got out of the car to speak to him regarding Phillips' probation. During this exchange, Conley saw a young man with glasses walk past Phillips and sit on the steps of the porch at 8 Almont Street. Conley did not recognize the man with the glasses at first, but upon further observation recognized him as the Defendant, with whom he has had previous contact in his duties as a police officer approximately three weeks earlier.

Officer Conley alleges that he then saw Mr. Givens swing his right hand across his body and drop an object off the porch, resulting in an audible thud. Conley claims that as he leaned over the bannister to look into the yard, Mr. Givens got up and began walking across the porch towards the entrance to 6 Almont, which is a second unit in the same building as 8 Almont. Conley indicated to the other officers to stop Givens, who went across the porch and into the entrance to 6 Almont Street. Mr. Givens was subsequently found in a bedroom on the 3rd floor of the unit, and is alleged to have been there without permission.

As officers attempted to stop Mr. Givens as he went into 6 Almont Street, there were

several other police stops of other individuals who left the area in different directions. Phillips was seen running down Almont Street away from Blue Hill Avenue and getting into a vehicle. As the vehicle then drove back towards the intersection with Blue Hill Avenue where this incident took place, it was stopped at gunpoint by several officers. Separately, a second gun was located around the corner among bushes in front of 1439-1451 Blue Hill Avenue, where other individuals had been seen.

Mr. Givens is not accused of possessing the second firearm. The defense is unaware of whether any charges have been brought relative to that firearm, or against Rashad Phillips or the driver who was ordered out at gunpoint. The defense is also not aware of any alleged connection between this incident and the earlier shooting on Woolson Street.

The discovery indicates that the firearm charged in this indictment had been stolen from a residence in Boston in 2012.

*Basic evidentiary principles*

Evidence is relevant if it makes a fact of consequence more or less probable than it would be without the evidence.  F.R. Evid. 401; *see United States v. Lamberty*, 778 F.2d 59, 60-61(1st Cir. 1985) ("The governing hypothesis of any criminal prosecution, for the purpose of determining relevancy of evidence introduced, consists of elements of the offense charged and any relevant defenses raised to defeat criminal liability.").  Irrelevant evidence is not admissible. F. R. Evid. 402.

Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of a number of factors set out in F.R. Evid. 403, including unfair prejudice and confusing the issues. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the

capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (internal citations and some internal quotation marks omitted).

Where the evidence in question is character evidence, such evidence is generally inadmissible, subject to certain exceptions. *See* Fed. R. Evid. 404. Specifically, a two-part test applies in deciding whether evidence is admissible under 404(b): "First, it must determine whether the evidence has 'special' relevance other than establishing propensity . . . . Second, the court must consider whether Rule 403 requires exclusion of the evidence because the danger of unfair prejudice substantially outweighs the probative value." *United States v. Landry*, 631 F.3d 597, 602 (1st Cir. 2011). Typically, courts find that evidence has "special relevance" when that evidence bears on a disputed fact that relates to an element of the prosecution's case. *See, e.g. United States v. Aguilar-Aranceta*, 58 F.3d 796, 800 (1st Cir. 1995).

The verdict in this case should not be based on jurors' conclusion that the defendant is "the sort of person" who would commit the charged offense, or is "so dangerous he should be locked up regardless of whether or not he committed this offense." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) (in prosecution for possession of an unregistered automatic weapon, where defense argued malfunction in internal machinery of the weapon, it was reversible error to introduce photograph of that weapon next to other "nasty-looking weapons" belonging to his roommate).

*Application to specific items*

1. The relevant statute does not use the word "felon" or "felony." Rather, it bars firearm possession by a person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year." In common parlance, "felon" denotes someone who has done more than just be convicted of a single offense punishable by more than one year. The Merriam-Webster Online Dictionary, for example, defines the term as "a criminal who has committed a serious crime (called a felony)." *See* http://www.merriam-webster.com/dictionary/felon (last visited July 13, 2014). Beyond their definitions, the words "felon" and "felony" have pejorative connotations.

Mr. Givens has stipulated that he has a prior conviction punishable by more than one year. Any other evidence relating to any prior arrest or conviction is both irrelevant under Rule 401, unfairly prejudicial and confusing under Rule 403, and impermissible character evidence under Rule 404.

2. Evidence that the firearm Mr. Givens allegedly possessed was stolen is irrelevant, confusing, and unfairly prejudicial. There is no evidence whatsoever that Mr. Givens was involved in the alleged theft of the firearm.2 Such evidence suggests additional criminal acts for which the Defendant is not charged and should not be held to answer to by the jury.

3. Mr. Givens is accused of actual possession of the firearm and ammunition based upon a police officer's claim that he saw Givens toss the firearm and then flee. The government has

---

2 Indeed, the police report indicates curious circumstances of the alleged theft. The firearm was alleged to have been left in a backpack inside the entrance to the owner's home between 3:00 and 5:00 a.m. Around 5:00 a.m. both were found to be missing without any evidence of someone else having entered. The owner had also reported two prior guns having been stolen.

provided no discovery suggesting Mr. Givens was involved in the Woolson Street shooting. According to police reports and grand jury testimony, the interaction with the males on Almont Street began with the discussion with Phillips about his probation, not questioning about the events on Woolson Street. Reference to that shooting would strongly but impermissibly suggest to the jury that these young men, including the Defendant, had something to do with it.

4. Recognition of Givens by Officer Conley is irrelevant and unfairly prejudicial because identity is not challenged in this case. The defense will not argue misidentification by the officers. Therefore the only reason to introduce any prior police contact with Givens would be to suggest to the jury that he either has the propensity or character to commit crimes, both of which are expressly prohibited by the Rules of Evidence.

The same reasoning applies directly to any evidence of the Defendant's alleged gang membership. This is not a case where an active gang feud is alleged as the motivation for a particular act. Nor, as has been stated, is any conspiracy alleged by the government. Alleged gang membership is strongly inflammatory and prejudicial, and should only be permitted upon a strong showing of its probative value. On the straightforward facts of this case, no such showing is made here.

Wherefore, the defense respectfully requests that the Motion to Exclude be Allowed.

Respectfully submitted,

ANDRE GIVENS
by his attorney

*/s/ Joshua Hanye*
Assistant Federal Defender
BBO # 661686
51 Sleeper Street, 5th Fl.
Boston, MA 02110

617-223-8061

**Certificate of Service**

     I, Joshua Hanye, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 4, 2015.

*/s/ Joshua Hanye*
Joshua Hanye

לזל